UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KRYSTAL BAILEY ) | CIVIL ACTION |
|     Plaintiff, ) | |
| ) | JURY TRIAL DEMANDED |
| v. ) | |
| ) | |
| NRA GROUP, LLC d/b/a NATIONAL ) | |
| RECOVERY AGENCY ) | |
|     Defendant ) | MARCH 29, 2013 |

## COMPLAINT

1. This is a suit brought by a consumer under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.,* and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* against NRA Group, LLC d/b/a National Recovery Agency ("NRA"). Plaintiff also includes pendent state law claims for NRA's violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat § 42-110a *et seq*.

2. Plaintiff, Krystal Bailey, is a consumer residing in Meriden, Connecticut.

3. NRA is a Pennsylvania limited liability corporation, is a "debt collector" as defined by the FDCPA, and is registered with the Connecticut Department of Banking as a Consumer Collection Agency.

4. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692, 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

5. This Court has jurisdiction over NRA because it regularly collects debts in Connecticut.

6. Venue is proper because the transaction alleged herein occurred in this state.

7. On or around January 15, 2013 Plaintiff received a series of successive phone calls to her cellular telephone from phone number 1-800-360-4319, a number belonging to NRA.

8. Plaintiff was at work at the time of the calls and did not answer the first three calls to her cellular telephone.

9. As the calls persisted, Plaintiff became concerned that the calls might relate to an emergency, and she decided to answer the fourth call even though she was at work.

10. When Plaintiff answered the call, she heard a perceptible pause and had to repeat "Hello" several times before she was connected with a live operator.

11. Upon information and belief, the calls were placed with the use of an automatic telephone dialing system and/or an artificial or prerecorded voice or through the use of equipment capable of making automatic telephone dials.

12. The female operator ("the Operator") inquired as to Plaintiff's identity and identified herself as a representative of NRA.

13. Plaintiff asked for the Operator's name, but the Operator refused to provide it.

14. The Operator told Plaintiff that she was calling in regard to a debt that had been assigned to NRA for collection and attempted to collect the alleged debt.

15. Prior to the call, Plaintiff had not been aware of the alleged debt and had not heard of the claimed original creditor, Clinical Laboratories.

16. Plaintiff informed the operator that she was unfamiliar with the alleged debt and requested that NRA provide her with something in writing.

17. The Operator refused, claiming that NRA had already sent Plaintiff a written notice.

18. Plaintiff told the operator that she had not received any such notice and requested that NRA resend whatever it had previously sent her.

19. The Operator then became belligerent and used abusive, obscene, profane, and harassing language toward Plaintiff.

20. When Plaintiff maintained her request for written notice, the Operator threatened to make an indication that Plaintiff had refused to pay the alleged debt.

21. Plaintiff told the Operator that she did not refuse to pay the Debt, but that she merely was requesting written documentation.

22. The Operator reiterated her threat to place the account as a refusal to pay and eventually hung up on Plaintiff.

23. Following the January 15, 2013 calls, NRA placed at least 6 additional calls to Plaintiff's cellular telephone.

24. Upon information and belief, those calls were placed with the use of an automatic telephone dialing system and/or an artificial or prerecorded voice or through the use of equipment capable of making automatic telephone dials.

25. As evidenced by the additional calls to Plaintiff's cell phone following January 15, 2013, NRA did not intend to indicate that Plaintiff refused to pay the debt at the time it threatened to do so.

26. On or around February 15, 2013, Plaintiff sent a letter to NRA notifying it that she disputed the alleged debt and requesting copies of all prior correspondence that it claimed to have sent her.

27. NRA responded to Plaintiff's request on or around February 20, 2013, but it did not enclose any notices previously sent to Plaintiff.

28. Plaintiff never provided NRA or Clinical Laboratories with consent to contact her on her cellular telephone.

29. NRA violated the TCPA, 47 U.S.C. § 227(b), each time it called Plaintiff's cell phone using an automatic telephone dialing system or through the use of equipment capable of making automatic telephone dials. Pursuant to 47 U.S.C. § 227(b)(3), NRA is liable to Plaintiff in the amount of $500 for each call made to Plaintiff's cell phone and, to the extent that the TCPA violations are deemed to be intentional, it is liable for up to $1,500.

30. NRA violated the FDCPA § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of a debt, and FDCPA as described above. Specifically, NRA placed at least four successive calls to Plaintiffs' cell phone in order to induce her to answer the telephone, used obscene, abusive or profane language the natural consequence of which was to abuse Plaintiff, and used obscene or profane language and made threats in order to oppress Plaintiff and prevent her from exercising her rights.

31. NRA violated the FDCPA § 1692e by making false, deceptive or misleading representations in connection with the collection of the alleged debt. Specifically, NRA misrepresented Plaintiff's rights to seek verification of the alleged

debt, and misrepresented its intention to place Plaintiff's account into "refusal to pay" status.

32.     NRA violated the FDCPA § 1692g by failing to send Plaintiff written notice complying with 15 U.S.C. 1692g(a)(1) as its initial communication with Plaintiff, or within 5 days from its initial communication with Plaintiff.

33.     NRA's conduct also constitutes unfair and deceptive acts in violation of CUTPA that have caused Plaintiff ascertainable losses, including, but not limited to, costs associated with receipt of NRA's improper communications on electronically powered devices, costs incurred in association with mailing her written request for NRA's prior correspondence, embarrassment, and shame.

**WHEREFORE**, the Plaintiff claims statutory damages of $500 for every call made to her cell phone through the use of autodialing equipment pursuant to 47 U.S.C. § 227(b)(3) plus damages for any additional calls that may occur; actual damages and statutory damages of up to $1,000 pursuant to 15 U.S.C. § 1692k(a); attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3); and actual damages, attorney's fees and costs, and punitive damages pursuant to Conn. Gen. Stat. §42-110g.

**PLAINTIFF KRYSTAL BAILEY**

By: /s/ Hailey R. Gallant
Daniel S. Blinn (ct02188)
Hailey R. Gallant (ct29150)
Consumer Law Group, LLC
35 Cold Spring Rd, Suite 512
Rocky Hill, CT  06067-9997
dblinn@consumerlawgroup.com
hgallant@consumerlawgroup.com
Tel (860) 571-0408
Fax (860) 571-7457